## Teresa V. Fitzgerald *v.* William B. Fitzgerald
### (10489)

Healey, Parskey, Shea, Grillo and F. Hennessy, Js.

Argued February 4—decision released May 3, 1983

*Cynthia C. George,* with whom, on the brief, were *Samuel V. Schoonmaker III* and *Robert M. Haas, Jr.,* for the appellant (plaintiff).

*Gary I. Cohen,* with whom, on the brief, was *John C. Bullock,* for the appellee (defendant).

Arthur H. Healey, J. On October 21, 1980, a judgment was entered by the state trial referee, *Hon. Irving R. Levine,* dissolving the parties' marriage. In this

appeal the plaintiff is challenging the referee's failure to award her attorney's fees[1] as part of his financial orders.

The parties were married in Italy on October 12, 1963. At the time that the plaintiff filed this action for dissolution of their marriage, the parties had three minor children. One child was fifteen years of age, while the other children, who were twins, were ten. The state referee found that the parties' marriage had broken down irretrievably and entered a decree dissolving the marriage on that basis. The referee awarded custody of the three minor children to the plaintiff.

After specifically stating that he had considered "all the elements and requirements of statutes involved and set forth in the cases dealing with the subject and all the evidence submitted . . ." the referee entered the following financial orders: The defendant was to pay $3000 per month in unallocated alimony and support until such time as the plaintiff died, remarried, or cohabited with another person under circumstances which would cause a change in her financial needs. In the event that any of the aforementioned occurred, alimony would cease but the defendant was to continue paying $600 per month in child support for each child. In the event none of these occurred, then as each child reached majority, the unallocated alimony and support was to be reduced by $600 per month. For each calendar year the amount of unallocated periodic alimony

[1] The trial court's memorandum of decision does not refer to the amount of counsel fees. It, of course, made no finding of reasonableness of any such fees. We note, however, that the plaintiff's brief states that her present counsel submitted affidavits that fees on a time basis amounted to $8909 plus disbursements of $938.57. It also points out that, in addition, she sought reimbursement for the fees of her former Connecticut counsel in the amount of $400 and of her former New York counsel in the amount of $2950. The defendant's brief also states that she has already paid $6000 in counsel fees to her former counsel and present counsel.

and support was to increase by 25 percent of the defendant's gross income over $100,000 and was to decrease by 25 percent of the gross earnings of the plaintiff. The defendant was ordered to pay all educational and medical[2] expenses of the minor children and was to continue in force all life insurance policies maintained with the children as irrevocable beneficiaries during their minority. No lump sum alimony was awarded, but the two parties were to keep all the assets and liabilities listed on their financial affidavits with the exception that the plaintiff was to be responsible for her share of the capital gains tax resulting from the sale of the last family homestead.[3] Finally, the referee denied the plaintiff's claim for counsel fees.

As a result of the state referee's orders, the parties were left with the following assets and liabilities: The plaintiff wife had total listed assets of $127,915. Her total liabilities were listed as $4394.43. Of the total assets listed by the plaintiff, $45,200 could be clearly considered as liquid assets. There was a substantial dispute, however, regarding the availability of $33,000 of that amount which was located in a bank in Italy and which, under Italian law, the plaintiff was allegedly unable to take out of the country.[4] Her other assets consisted of $25,000 in silver, $30,000 in furniture and antiques, $25,000 in paintings and $2715 of equity in an automobile.

---

[2] The judgment ordered that the defendant pay the children's "medical, dental, hospital, nursing, psychological, psychiatric and prescription drug expenses."

[3] The family homestead, which was jointly owned, was sold after the parties separated but before the trial; the net proceeds from that sale were divided evenly between them. The parties' jointly owned personal property was divided by agreement.

[4] The state trial referee made no finding concerning the plaintiff wife's accessibility to the Italian funds. The plaintiff, a native of Italy, made a number of trips to Italy during the course of the marriage. The balance of the $45,200 consisted of a savings account containing $200 and a six month money market certificate of $12,000 bearing 14½ percent interest.

The defendant's total listed assets amounted to $105,405. His total listed liabilities were $68,565. The defendant's assets can be categorized as follows: $2000 in liquid funds,[5] $8400 of equity in a real estate partnership; $5000 in furniture; with the balance contained in the defendant's law firm capital account and pension fund. The defendant testified that the assets in the capital account and pension fund could not be obtained unless he withdrew from the firm, retired or died.

Finally, the evidence presented indicated that the defendant was a successful lawyer whose last reported gross annual income was approximately $100,000. Although the plaintiff was highly educated in Europe, she had never held a job during the time that the parties were married.

We now turn to the issue raised by this appeal. In denying the plaintiff's request for attorney's fees, the state trial referee, in his memorandum of decision, stated as follows: "The plaintiff's claim for counsel fees is governed by the recent Supreme Court decision in *Koizim* v. *Koizim* [181 Conn. 492, 435 A.2d 1030 (1980)]. Accordingly, the request for counsel fees is denied."

The plaintiff claims that the state trial referee erred in two respects. First, she claims that the referee committed an error of law by disregarding statutory criteria for awarding counsel fees as set forth in General Statutes §§ 46b-62[6] and 46b-82.[7] According to the plain-

---

[5] This money was contained in a personal checking account.

[6] General Statutes (Rev. to 1981) § 46b-62 provides as follows: "In any proceeding seeking relief under the provisions of this chapter and sections 17-323a, 17-323b, 45-162, 46b-1, 46b-6, 46b-204, 47-14g, 52-362 and 54-27, the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

[7] General Statutes § 46b-82 provides as follows: "At the time of entering the decree, the superior court may order either of the parties to pay

tiff, this error was a result of the state trial referee's erroneous interpretation of this court's decision in *Koizim v. Koizim*, 181 Conn. 492, 435 A.2d 1030 (1980), which was decided approximately three months prior to the entry of judgment in this case. The plaintiff's second claim is that even if we do not find any such error of law, the failure to award attorney's fees based on the evidence and the statutory criteria was an abuse of discretion. We disagree with both claims and, therefore, affirm the judgment of the state trial referee.

In *Koizim,* we stated that "[c]ounsel fees are not to be awarded merely because the obligor has demonstrated an ability to pay. 'Courts ordinarily award counsel fees in divorce cases so that a party (usually the wife) may not be deprived of her rights because of lack of funds.' . . . In making its determination regarding attorney's fees the court is directed by General Statutes § 46b-62 to consider the respective financial abilities of the parties. *Murphy v. Murphy*, 180 Conn. 376, 380, 429 A.2d 897 (1980). Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so." *Koizim v. Koizim,* supra, 500–501. In that case we reversed an award of attorney's fees of approximately $55,000 holding that because "the defendant

alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

had *ample* liquid funds as a result of the other orders in this case there was no justification for an allowance of counsel fees in this case." (Emphasis added.) Id., 501.

The plaintiff claims that the state trial referee equated the words "ample" liquid funds as used in the *Koizim* decision with the words "any" liquid funds. Therefore, she argues that because she did have sufficient liquid funds to pay her counsel fees, the referee disregarded General Statutes §§ 46b-62 and 46b-82, even though the effect of that decision, according to the plaintiff, "is to completely exhaust the plaintiff's liquidity." In oral argument, counsel for the plaintiff further emphasized her claim that error was committed in disregarding the statutory criteria by stating that the *Koizim* decision was not the law of the state of Connecticut; rather, she claims that General Statutes §§ 46b-62 and 46b-82 require a decision regarding counsel fees to be based on an analysis of the statutory criteria therein. Furthermore, counsel for the plaintiff claimed that the state trial referee, at the time that he decided this case, did not have the benefit of later cases decided by this court that "clarified" our decision in *Koizim.*

We begin our analysis by stating that our decision in *Koizim* is part of the law of the state of Connecticut. Furthermore, even though under our commonlaw system new decisions may shed light on earlier cases due to the unique circumstances presented in each case, none of our decisions interpreting *Koizim* has overruled or changed our holding therein. See, e.g., *Burton* v. *Burton,* 189 Conn. 129, 142 n.15, 454 A.2d 1282 (1983); *Weiman* v. *Weiman,* 188 Conn. 232, 236–37, 449 A.2d 151 (1982); *Salvio* v. *Salvio,* 186 Conn. 311, 328, 441 A.2d 190 (1982); *Venuti* v. *Venuti,* 185 Conn. 156, 163, 440 A.2d 878 (1981); *Kaplan* v. *Kaplan,* 185 Conn. 42, 45, 440 A.2d 252 (1981); *Arrigoni* v. *Arrigoni,*

184 Conn. 513, 519–20, 440 A.2d 206 (1981); *Fattibene* v. *Fattibene,* 183 Conn. 433, 443–44, 441 A.2d 3 (1981). Therefore, the trial court was correct in stating that its decision regarding attorney's fees was "governed" by the principles set forth in *Koizim.*

In regard to the plaintiff's claim that the referee disregarded General Statutes §§ 46b-62 and 46b-82 by misconstruing the *Koizim* decision, there is nothing in the record to support such a claim. As previously noted, the memorandum of decision merely states that the award of counsel fees was "governed" by our decision in *Koizim.* Nowhere in the memorandum of decision can it reasonably be inferred that the referee equated the term "ample" liquid funds with "any" liquid funds, thereby disregarding the statutory criteria and the respective financial positions of the parties. Furthermore, in *Koizim* we stated that a trial "court is directed by General Statutes § 46b-62 to consider the respective financial abilities of the parties." *Koizim* v. *Koizim,* supra, 501. We cannot conclude, therefore, that the state trial referee committed an error of law and disregarded the applicable statutes by stating that he was "governed" by the *Koizim* decision.[8]

The plaintiff's second claim of error is that, under the particular circumstances of this case, the state trial referee abused his discretion in failing to award the plaintiff counsel fees. *Weiman* v. *Weiman,* supra; *Kaplan* v. *Kaplan,* supra. In making such a determination we are guided by certain principles. The decision to award attorney's fees is made independently from

---

[8] Rather than asserting that the state trial referee misconstrued the *Koizim* decision, the plaintiff should have requested the referee to rectify his memorandum of decision by elaborating upon the factual basis of his judgment. See Practice Book §§ 3082, 3108; *Dubicki* v. *Dubicki,* 186 Conn. 709, 715n, 443 A.2d 1268 (1982).

a decision to award alimony or to assign property in a dissolution action.[9] See *Murphy* v. *Murphy,* 180 Conn. 376, 381, 429 A.2d 897 (1980). Therefore, if a trial court does make other financial awards, this does not mean that it must also, ipso facto, make an award of attorney's fees. This is evident in the language of General Statutes § 46b-62, which permits, without requiring, a trial court to award attorney's fees after considering the respective "financial abilities" of the parties "and the criteria set forth in section 46b-82." This was also the thrust of our decision in *Koizim* where we reversed an award of counsel fees because of the other financial awards ordered by the court, which left the defendant with ample liquid funds to pay her own counsel fees, in which case we held that she should have been permitted to do so.[10] *Koizim* v. *Koizim,* supra, 501; see also *Burton* v. *Burton,* supra. We have also noted that the availability of "sufficient cash" to pay one's attorney's fees is not an absolute litmus test for making an award pursuant to General Statutes § 46b-62. *Venuti* v. *Venuti,* supra, 162; *Arrigoni* v. *Arrigoni,*

---

[9] This does not imply that a trial court must make a separate award of attorney's fees. It is within a court's discretion to order that the funds to pay attorney's fees come out of an alimony award or property assignment. Under the statutory scheme; i.e., General Statutes §§ 46b-62 and 46b-82; it is the actual decision to award attorney's fees that is made independently. See *Murphy* v. *Murphy,* 180 Conn. 376, 381, 429 A.2d 897 (1980).

[10] The plaintiff correctly points out that in *Murphy* v. *Murphy,* 180 Conn. 376, 429 A.2d 897 (1980), we noted that where a trial court has reviewed the evidence in applying the criteria for awarding alimony and has declined to make such an award, since the same criteria applied to the same evidence applies to attorney's fees, an award of attorney's fees would not be justified absent some indication in the record explaining this discrepancy. Id., 381. She claims that the same reasoning should be applied where a trial court does make a financial award. This reasoning is unpersuasive because in the situation where a trial court does make a financial award, the court is altering the relative financial positions of the parties in an equitable manner. Therefore, because General Statutes § 46b-62 is permissive, and because the court has already made an equitable redistribution, there is no basis for assuming a further redistribution is required by an order for payment of counsel fees.

supra, 519. This is because a trial court's discretion should be guided so that its decision regarding attorney's fees does not undermine its purpose in making any other financial award. See *Arrigoni* v. *Arrigoni,* supra; *Koizim* v. *Koizim,* supra.

"Whether a spouse has 'ample liquid funds' with which to pay counsel fees; see *Koizim* v. *Koizim,* [supra]; can only be determined by examining the total financial resources of the parties in light of the statutory criteria." *Venuti* v. *Venuti,* supra, 163. Therefore, if, on the basis of the total financial resources of the parties, the trial court concludes that denying an award of counsel fees would not undermine its purpose in making its prior financial orders, the court should allow each party to pay his or her own counsel fees. If, on the other hand, the trial court concludes, based on the total financial resources of the parties, that denying an award of counsel fees would undermine its prior financial orders, then it may award counsel fees to the requesting party. An abuse of discretion in denying an award of counsel fees will only be found if this court determines that the trial court could not have reasonably concluded as it did. *Weiman* v. *Weiman,* supra, 237; *Murphy* v. *Murphy,* supra, 379.

In the present case, we cannot find that the state trial referee abused his discretion and acted unreasonably in denying the plaintiff's request for counsel fees. The plaintiff admits in her brief that because of the referee's orders she had sufficient funds to pay the balance of her fees. She claims that if she is forced to pay those fees, she would be left with virtually no liquid assets. As has been noted, however, a determination of what constitutes "ample liquid funds," justifying the denial of a fee request, requires a consideration of whether that denial would undermine the court's prior financial orders. This, in turn, necessitates an inspection of

the total assets of both spouses. *Venuti* v. *Venuti,* supra. According to the financial affidavits submitted by the parties, the plaintiff has been left with net assets totaling approximately $123,000 while the defendant has net assets of approximately $36,000. Even more important, however, in comparing the net liquid assets of the parties with their liabilities, the plaintiff has a net of approximately $7800,[11] while the defendant has a negative cash balance of approximately $66,500.[12] Even taking into account the defendant's salary,[13] the state trial referee could have reasonably concluded that denying an award of attorney's fees to the plaintiff would not have undermined his prior financial orders. In fact, granting the plaintiff's request, which would have increased the defendant's indebtedness, quite possibly would have had the very effect sought to be avoided; that is, undermining the trial court's previous financial orders. In such circumstances, we cannot find that there has been an abuse of discretion.

There is no error.

In this opinion the other judges concurred.

---

[11] This figure assumes that the $33,000 in the plaintiff's bank account in Italy was unavailable, an issue unresolved by the state trial referee.

[12] As noted previously, there was testimony from which the state trial referee could have concluded that the assets in the defendant's law firm capital account and pension plan that had accrued to the defendant, could not be withdrawn until the defendant withdrew from the firm, retired or died.

[13] There was also testimony that the defendant's recent salary was unusually inflated for the last reported year due to the settlement of two cases that generated substantial fees for his law firm.