MARSHALL R. HOLLEY *v.* SANDRA M. HOLLEY
(11704)

HEALEY, PARSKEY, SHEA, GRILLO and COVELLO, Js.

Argued April 13—decision released July 24, 1984

*William F. Gallagher,* for the appellant (plaintiff).

*James R. Greenfield,* with whom was *Jean C. Schmidt,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This case is an appeal by the plaintiff from the financial portions of a judgment rendered by the trial court dissolving his marriage to the defendant, Sandra M. Holley. Although the defendant initially opposed the dissolution, the trial court found that the marriage had broken down irretrievably; that ruling has not been contested by the parties. This appeal thus concerns only the trial court's award of alimony and counsel fees to the defendant.

The trial court's memorandum of decision discloses the following: The parties were married on August 14, 1966, and had one minor child who was born in 1974.[1] At the time of trial, the plaintiff husband was a forty-six-year-old physician, having practiced as an obstetrician and gynecologist in the New Haven area since

---

[1] Although the trial court's memorandum and the judgment state that the parties' minor child was born August 11, 1977, the parties testified that he was seven years old at the time of trial and was born September 19, 1974. We also note that the original complaint alleges that the child was born on September 19, 1974.

1965. Through his professional corporation, the plaintiff's annual income was approximately $100,000, a figure which included both his salary and contributions to various pension and profit-sharing plans. The defendant wife, who holds a Ph.D. in speech pathology, was earning approximately $23,000 per year as an associate professor of communication disorders at Southern Connecticut State College.

The financial affidavits of the parties disclose the following: The parties jointly owned a family home in New Haven valued at approximately $90,000. In addition to his one-half interest in the equity of their residence, valued at approximately $22,000, and his income, the plaintiff had accumulated substantial assets totaling approximately $280,000. The defendant's sole asset was her one-half interest, valued at approximately $22,000, in the equity of their residence.

The trial court concluded that the marriage had broken down irretrievably and awarded joint legal custody of the minor child with sole physical custody in the defendant. Reasonable visitation rights were granted to the plaintiff. The court further awarded the defendant the plaintiff's interest in the family residence; $15,000 in lump sum alimony and $10,000 to purchase an automobile; $35,000 annually in unallocated alimony and child support until the minor child reached the age of eighteen years, which would be reduced to $20,000 per year thereafter; and counsel fees of $7500.[2]

---

[2] The following are the financial and property aspects of the trial court's judgment in this case:

"The plaintiff shall convey to the defendant all his right, title and interest to the real estate at 215 Stimson Road, New Haven. The defendant shall assume the payment of mortgage, principal and interest and taxes. The plaintiff shall be responsible for the payment of the mortgage principal, interest and taxes accruing prior to the date of this judgment.

"The plaintiff shall pay to the defendant within 60 days the sum of $15,000 as lump sum alimony and within 90 days the sum of $10,000 to be used

Following the entry of judgment, the plaintiff filed a motion to reargue and set aside the judgment. The only portion of that motion relevant to this appeal is the plaintiff's claim that the court's award represented "an unreasonably disproportionate division of assets." At the hearing on this motion, the trial court heard the claims of the parties, including the effect of the existence of a custodial fund established for the minor child's education. Although the parties had failed through inadvertence to disclose the fund's existence during the earlier dissolution proceedings, this post-judgment motion was denied by the trial court.[3]

The plaintiff claims that the trial court erred in awarding the defendant: lump sum and periodic alimony, which allegedly represented an unreasonably high proportion of the plaintiff's income and assets; permanent and continuing alimony in the annual amount of $20,000 after the minor child reaches the age of eighteen; and counsel fees, in view of the award of lump sum and periodic alimony. The plaintiff further claims that the trial court erred in refusing to alter the award of alimony and support after the existence of the custodial fund, established for the minor child's future educational

---

by the defendant for the purchase of a new automobile.

"The plaintiff shall pay the defendant as unallocated alimony and child support the sum of $35,000 per year, payable in equal monthly instalments on the first day of each month, said payments to be retroactive to December 8, 1981, and are to be paid prospectively with the current amount due with an additional $1,000 per month until the accrued arrearage dating back to December 8, 1981 has been paid. Said unallocated alimony and child support shall continue until the minor child of the parties reaches the age of 18 years, at which time alimony shall be reduced to $20,000 per year.

"The plaintiff shall pay the defendant as an allowance to defend the sum of $7,500."

[3] The relevant portion of that October 1, 1982 memorandum of decision on the postjudgment motions states that "[t]he plaintiff's motion to reargue, set aside or modify the orders issued is denied for the reason that the facts presented do not diminish the need of the defendant for support for herself and child in the amounts originally ordered."

needs, was disclosed to the court in the postjudgment hearing on the plaintiff's motion to reargue. We find no error.

"As has been repeatedly stated by this court, judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did." *Beede* v. *Beede,* 186 Conn. 191, 194, 440 A.2d 283 (1982); see also *Valante* v. *Valante,* 180 Conn. 528, 530, 429 A.2d 964 (1980); *Posada* v. *Posada,* 179 Conn. 568, 572, 427 A.2d 406 (1980); *Ayers* v. *Ayers,* 172 Conn. 316, 321-22, 374 A.2d 233 (1977). " 'With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. *Gallo* v. *Gallo,* 184 Conn. 36, 50, 440 A.2d 782 (1981); *Fattibene* v. *Fattibene,* 183 Conn. 433, 442, 441 A.2d 3 (1981); *deCossy* v. *deCossy,* 172 Conn. 202, 204, 374 A.2d 182 (1977).' *Venuti* v. *Venuti,* 185 Conn. 156, 161, 440 A.2d 878 (1981). Moreover, 'the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage.' *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975); see *Robinson* v. *Robinson,* 187 Conn. 70, 72, 444 A.2d 234 (1982)." *Anderson* v. *Anderson,* 191 Conn. 46, 57, 463 A.2d 578 (1983).

We begin by addressing the plaintiff's claims challenging the trial court's alimony award. The plaintiff claims that "[t]he combination of the $35,000.00 unallocated alimony and support, the future $20,000.00 alimony order and the amount of lump sum alimony awarded, in view of the award of the husband's interest in the family home to the wife, was an abuse of discretion and unwarranted by the evidence." The plaintiff contends that the trial court miscalculated the amount of funds

available to the plaintiff as present income and erroneously considered certain investment funds both as present available income and as assets "invested for the purpose of obtaining future income."[4] He claims that the trial court's award of permanent and continuing alimony in the amount of $20,000 per year (to be payable on a monthly basis) after the parties' minor child attains the age of eighteen would, in effect, deprive him of any retirement income. The plaintiff also claims that physicians who rely on manual skills typically lose some of those essential professional skills with increasing age, thereby rendering them unable to practice and causing them to suffer an attendant loss of income.

The defendant maintains, however, that through his professional medical corporation, the plaintiff had the ability to establish the salary drawn and any contributions made on his behalf to the pension and profit-sharing plans. She claims that the plaintiff thus possessed a substantial degree of control over the annual income immediately available to him. The favorable tax consequences flowing from the deferred compensation arrangements and the periodic, unallocated alimony, the defendant argues, would allow the plaintiff to maintain, without reduction, his current level of personal contributions to the pension and profit-sharing plans while still enjoying a net annual pretax income of $47,200. We conclude that the trial court did not abuse its discretion in entering the alimony award.

Initially, we note that the plaintiff offered no documentation at trial, or at the postjudgment hearing on

---

[4] The trial court specifically found that the plaintiff had "available to him approximately $100,000 per year through the device of his professional corporation, the setting of a salary and the establishment of a pension and profit sharing plan." The plaintiff's financial affidavit submitted for trial declared $279,872.43 as constituting the value of his total assets.

The defendant claimed gross weekly earnings from employment of $446.76 in addition to her sole asset, her one-half interest, valued at $22,000, in the equity of the family home.

his motion, to substantiate his claim concerning the economic and professional impact of aging upon physicians in his specialty. Nor did the plaintiff offer any special circumstance wherein he as an individual would be unable to retain a significant earning capacity in future years. See *Valante* v. *Valante,* supra, 531. The trial court, therefore, simply did not have before it sufficient evidence to accept these claims of the plaintiff. Moreover, it must be recognized that General Statutes § 46b-86 provides for modification of a court's permanent alimony award in the absence of a dissolution decree precluding any modification.[5] As the order in the present case does not preclude any future modification, the plaintiff, upon "a substantial change" in either party's circumstances, may then move the trial court for such modification. See, e.g., *Lupien* v. *Lupien,* 192 Conn. 443, 444, 472 A.2d 18 (1984); *Bilosz* v. *Bilosz,* 184 Conn. 90, 93, 441 A.2d 59 (1981); *Milot* v. *Milot,* 174 Conn. 3, 5, 381 A.2d 528 (1977). The memorandum of decision indicates that the trial court properly considered and weighed the factors set forth in General Statutes § 46b-82 in determining the duration and

[5] General Statutes § 46b-86, entitled "Modification of alimony or support orders and judgments," provides: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law.

"(b) In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

amount of the alimony award.[6] See, e.g., *Weiman* v. *Weiman*, 188 Conn. 232, 234, 449 A.2d 151 (1982); *Posada* v. *Posada*, supra, 572–73.

We next turn to the plaintiff's claim concerning the custodial fund set aside to ensure the availability of adequate financial resources for the future educational needs of the parties' child. Apparently, both parties unintentionally failed to disclose at trial the existence of the custodial fund valued at approximately $42,000. The fund, therefore, was not considered by the trial court in its initial dissolution judgment and award. At the postjudgment hearing on the plaintiff's motion to reargue and set aside the original judgment, the parties were accorded full opportunity to present their positions on the significance of the custodial fund to the previously entered decree.[7]

The plaintiff contends that if the trial referee had been made aware of the fund's existence during the trial, the award to the defendant would have been adjusted accordingly. He claims that the defendant will not be compelled to put any of the monies contributed by him aside in order to provide for the minor child. The plaintiff attempts to buttress his argument here

---

[6] General Statutes § 46b-82 provides: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

[7] After this hearing, the trial court requested that the parties submit briefs on this issue.

through reference to certain remarks of the trial referee made during the postjudgment motion hearing concerning the possible impact that this custodial fund might have had upon his previous awards.

In its postjudgment memorandum denying the plaintiff's motion to reargue and to set aside the judgment, the trial court stated "that the facts presented do not diminish the need of the defendant for support of herself and child in the amounts originally ordered." It is clear that the court's reference to "facts presented" relates to the facts and arguments presented in the postjudgment hearing on the plaintiff's motion. Moreover, the conclusion that such facts "do not diminish" the defendant's needs substantiates the defendant's argument that the trial referee did consider the plaintiff's claims regarding the materiality of the custodial fund to the judgment. We conclude that this was not an abuse of the trial court's discretion.

Finally, the plaintiff challenges the award in the original dissolution judgment of $7500 counsel fees to the defendant.[8] Counsel fees were unwarranted, he argues, when considered in light of the totality of the award of lump sum and periodic alimony. The essence of his argument is that the plaintiff should not be required to pay the defendant's counsel fees as she had more than "ample means" to pay for her own attorney. We disagree.

The trial court based its decision regarding counsel fees upon the same testimony and financial affidavits that supported the other financial aspects of the decree. " 'Whether to allow counsel fees, and if so in what

---

[8] In marriage dissolution cases, counsel fees may be awarded under General Statutes § 46b-62, entitled "Orders for payment of attorney's fees in certain actions," which provides, inter alia, that "the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82."

General Statutes § 46b-82 is set forth in footnote 6, supra.

amount, calls for the exercise of judicial discretion.'
*El Idrissi* v. *El Idrissi,* 173 Conn. 295, 301–302, 377
A.2d 330 (1977) (counsel fees on appeal); *Krasnow* v.
*Krasnow,* 140 Conn. 254, 262, 99 A.2d 104 (1953) (counsel fees on appeal). ' "Courts ordinarily award counsel fees in divorce cases so that a party (usually the wife) may not be deprived of her rights because of lack of funds." ' *Fitzgerald* v. *Fitzgerald,* 190 Conn. 26, 30, 459 A.2d 498 (1983), quoting *Koizim* v. *Koizim,* 181 Conn. 492, 500–501, 435 A.2d 1030 (1980). In making its determination regarding attorney's fees on appeal, we deem it appropriate for the court in the exercise of its broad judicial discretion to consider the statutory criteria set out in General Statutes §§ 46b-62 and 46b-82 and the respective financial abilities of the parties. *Koizim* v. *Koizim,* supra, 501; see *Murphy* v. *Murphy,* 180 Conn. 376, 380, 429 A.2d 897 (1980). Recently, in *Fitzgerald* v. *Fitzgerald,* supra, we pointed out that, in the exercise of the trial court's discretion concerning an award of counsel fees, 'the availability of "sufficient cash" to pay one's attorney's fees is not an absolute litmus test for making an award pursuant to General Statutes § 46b-82. . . . This is because a trial court's discretion should be guided so that its decision regarding attorney's fees does not undermine its purpose in making any other financial award.' *Fitzgerald* v. *Fitzgerald,* supra, 33–34; see *Devino* v. *Devino,* 190 Conn. 36, 38–39, 458 A.2d 692 (1983)." *Anderson* v. *Anderson,* 191 Conn. 46, 58–59, 463 A.2d 578 (1983).

We agree with the defendant that the counsel fee award in this case is remedial in nature and is intended to restore her as nearly as possible to the position she was in prior to the dissolution of the marriage. Moreover, the trial court could have reasonably found that if an award of counsel fees were denied, the defendant would have been required to forego a portion of the alimony award in order to satisfy her obligations

to her attorney, thereby undermining its other orders. See, e.g., *Anderson* v. *Anderson,* supra, 59.

There is no error.

In this opinion the other judges concurred.